[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action by the plaintiff wife for a dissolution of marriage, alimony and other relief was returned to this court on March 12, 1991. The defendant appeared by counsel, admitted all of the allegations of the complaint, and filed a cross complaint seeking a dissolution of the marriage, an equitable distribution of the parties' assets and liabilities and other relief. The case was claimed for hearing and heard by this court on August 6, 1991.
The parties submitted financial affidavits, and stipulations as to the value of the marital residence located at 85 Rosemary Street, New London, CT at $125,000; the value of the defendant's pension plan at $31,354 (at normal retirement) and the value of his annuity at $16,636.54. The parties also submitted appraisals supporting these values.
The court, after hearing the parties, and their evidence, finds the following:
 1. The wife, by the name of Rose Mary Delorge, was lawfully married to the husband on August 29, 1980 at Brattleboro, Vermont.
 2. Both parties have resided in this state continuously for twelve months next before the filing of this complaint, and all statutory stays have expired.
 3. The marriage of the parties has broken down irretrievably, and there is no reasonable prospect for reconciliation.
 4. There are no children issue of the marriage, and no children have been born to the wife since the date of the marriage.
 5. Neither party is receiving assistance from any state or municipal agency.
The court notes the following facts:
The wife is 52 years of age, in good health, and presently works part time as a cashier earning $4.50 per hour. She has six children from her two prior marriages, both of CT Page 7338 which ended in divorce. She did not complete 10th grade, and has minimal vocational skills. In the past, she has worked as a furniture sander, a home companion and has cleaned houses and stores. She earned between $6.67 and $12 per hour at the cleaning work, which was her highest rate of pay. She has worked sporadically during the marriage, and presently earns $129 per week gross. In addition, she now receives $75 weekly for room and board from her son and daughter in law, who reside with her in one dwelling unit of the two family marital dwelling, $116.27 weekly in rental for the other unit and $60 weekly alimony pendente lite; the defendant also pays the monthly mortgage payment of principal, interest and taxes pursuant to the pendente lite order.
Although the wife never contributed much monetarily to the household except for food purchases when she worked, she cooked, cleaned and kept the house, and made non-monetary contributions to the family unit.
The husband, whose prior two marriages also ended in divorce, is 46 years of age, a high school graduate, and has worked for C. N. Flagg Power for the past 25 years, the last five years or so as a foreman/general foreman. During this period, he has rarely missed any time from work, and he presently enjoys gross earnings of $1,032 weekly, including overtime, which recently terminated. He has both a pension, which has a present value of $44,822 upon early retirement (age 55), and $31,354 upon normal retirement (age 65) and an annuity of $16,636. The husband has made all of the mortgage payments for the marital premises since it was purchased in 1986, and was the sole contributor to his pension and annuity. The wife shows no appreciable solely owned assets except for a car with no equity and some personal property. The jointly owned home has appreciated in value from $79,000 to $125,000. The parties have experienced difficulties throughout most of the latter years of the marriage and the wife began divorce proceedings twice before this action, both of which were withdrawn.
The parties show substantial liabilities on their financial affidavits, $31,175 on husband's and $4,900 on wife's, of which $2000 represents attorneys' fees, the rest being duplicative of the debts shown on the husband's affidavit. The evidence is clear, and the wife conceded, that aside from the $4,000 husband borrowed from Karen Roland, and some medical and utility bills, almost all of these liabilities were incurred solely by her through her use of credit cards and charges, none of which were used by husband or apparently signed for by him, and that she had a compulsion to shop. The amount spent and charged by her is approximately $25,000. She described herself as a "shopaholic", and has CT Page 7339 received counselling. Years ago, when the husband learned that the family's bills had gone out of control, he paid $10,000 toward the outstanding liabilities, and remonstrated with the wife, but the situation recurred. The evidence is also clear that the husband treated the wife generously, paid all of the family bills and extras, and purchased a new car (on credit) for her almost every other year. His actions in this regard contributed to the family's financial straits.
There was also testimony from each about the sins, transgressions and peccadillos of the other, each claiming that the other spouse's acts or omissions were the cause of the breakdown of their marriage. These included wife's claims of excessive drinking, verbal, physical and sexual abuse on the part of husband and husband's claims of wife's infidelity, excessive participation by her in card games and other recreational activities outside of the home (3-4 nights per week) and four trips to Mexico in the last four years (all without husband) the last of which caused her to lose her previous job.
It would serve no useful purpose in the view this court takes of this case to attempt to microscopically apportion degrees of fault between the parties. Suffice it to say, that although the parties were lawfully married to each other for the past five or six years, they did not appear to enjoy all of the intangible elements including companionship which are ordinarily part of a marriage, and seemed to go their own ways.
The court has considered all of the criteria contained in General Statutes sections 46b-81 and 82 and enters the following orders:
1. The marriage of the parties is dissolved on the ground of irretrievable breakdown.
2. Each shall have their own checking and savings accounts, and wife shall take and have the 1990 Buick automobile, subject to the loan, which she shall pay and she shall save the husband harmless therefrom.
3. The husband shall continue to provide health coverage to wife through his employment, for the maximum statutory period of 36 months, wife to pay the premium therefore, as stipulated by the parties. The parties are to cooperate in effecting this coverage.
4. The wife shall take and have her jewelry, as conceded by husband during oral argument. CT Page 7340
5. Pursuant to the parties' stipulation in open court, the remaining personal property shall be divided by the parties within 30 days of the filing of this decision. If said division cannot be accomplished, then the parties shall submit the dispute to binding arbitration to either Attorney Ramona Dittman or Attorney Barbara Quinn who shall equitably divide the items without regard to the financial orders entered by this court. The court considers the total value of these items of personal property to be in the range of $8,000 to $15,000, less the value of the jewelry awarded to wife, and therefore does not consider the effect of the ultimate disposition of these items in the framing of the court's financial orders.
6. The husband shall take and have his pension and retirement/annuity funds, free of any claim of wife.
7. The husband shall convey all his right, title and interest in the marital premises at 84 Rosemary Street, New London, to wife by quit claim deed; she shall assume and pay the mortgage thereon and save him harmless therefrom. Contemporaneously, wife shall execute and deliver to husband a promissory note in the amount of $18,000 payable with simple interest accruing at the rate of 4% per annum, on or before September 1, 1996, or sooner, upon wife's death, remarriage, cohabitation, sale of the premises, or her ceasing to reside there as her principal residence; said note to be secured by second mortgage, and to contain a provision for attorney's fees in the event of default.
8. The husband shall pay all of the obligations shown in Part 3 of this financial affidavit and save wife harmless therefrom. The court concludes that about $2900 of wife's liabilities are identical to those listed by husband.
9. Husband shall pay toward wife's attorney's fees the sum of $1000 within 60 days hereof.
10. Husband shall pay wife, as periodic alimony, the sum of $125 per week commencing August 16, 1991, said alimony to terminate upon wife's remarriage or cohabitation, or the death of either party, or on September 1, 1996, whichever occurs first. Said alimony shall not be otherwise modifiable as to term or amount.
Husband shall irrevocably designate wife as beneficiary of his $10,000 life insurance policy with Aetna (shown in Part 4 of his affidavit) so long as he shall be obligated to pay alimony hereunder. CT Page 7341
TELLER, J.